IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WALLACE IINUMA, as Successor Trustee of the Glenn Y. Kimura Revocable Living Trust, dated July 2, 2014,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.; COUNTRYWIDE HOME LOANS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; SELECT PORTFOLIO SERVICING, INC.; John Does 1-10; Jane Does 1-10; Doe Corporations 1-10; Doe Partnerships 1-10; Doe Entities 1-10; and Doe Governmental Units 1-10,<br><br>Defendants. | CIVIL NO. 14-00482 DKW BMK<br><br>**ORDER GRANTING MOTIONS TO DISMISS AMENDED COMPLAINT** |

# ORDER GRANTING MOTIONS TO DISMISS AMENDED COMPLAINT

## INTRODUCTION

This action is one of several filed in this district by Plaintiff Wallace Iinuma's counsel Robert Stone ("Stone"), alleging a quiet title claim on the basis that the mortgagor is unsure to whom mortgage payments should be made. This Court has already dismissed a prior quiet title action filed by Iinuma against Defendants. Because Iinuma's attempt to resurrect his quiet title claim is barred by issue preclusion and lack of subject matter jurisdiction, and he fails to state a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), Defendants' motions to dismiss are granted.

## BACKGROUND

Iinuma's Amended Complaint seeks damages and to quiet title on the grounds that Defendants Bank of America, N.A. ("BANA"), Countrywide Home Loans, Inc. ("CHL"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Select Portfolio Servicing, Inc. ("SPS") clouded his title and violated the FDCPA by originating and servicing the subject loan as mortgagee and nominee on behalf of the noteholder. Despite these assertions, Iinuma also contends that Defendants do not have any interest in the subject mortgage. Am. Compl. ¶¶ 43-45.

The Court first dismissed Iinuma's quiet title claim in *Iinuma v. Bank of America, N.A., et al.*, Civ. No. 14-00295 DKW-KSC ("*Iinuma I*"). The Court's October 20, 2014 Order explained that Iinuma lacked standing to bring his quiet title action and, therefore, the Court was without subject matter jurisdiction. The Court was clear in *Iinuma I* that "even if the court had subject matter jurisdiction, Plaintiffs' contention that they do not know to whom their debt is owed is not a basis to quiet title." *Iinuma I*, 10/20/14 Order at 8 (citation and quotations omitted). The Court dismissed the complaint in *Iinuma I*, ordered the case closed, and entered judgment on October 20, 2014. Iinuma did not appeal that decision.

Iinuma raises the same quiet title claim in the instant Amended Complaint filed on November 4, 2014, and tacks on a claim for violation of the FDCPA. He alleges that he was harmed when Defendants clouded title to the subject property and negatively reported against his credit with "false claims that he owes them a secured debt when he does not." Am. Compl. ¶¶ 47-48, 51-52. His FDCPA claim asserts that none of the Defendants hold the note nor are they legally authorized to act on behalf of the noteholder, and therefore, he was deceived into paying a debt that Defendants were not authorized to collect. *Id.* at 31-40.

**DISCUSSION**

Courts in this district have routinely dismissed similar cases filed by Iinuma's counsel alleging uncertainty regarding the identity of the mortgagee. Many of these cases have been dismissed for lack of subject matter jurisdiction, holding that mere uncertainty as to whom to pay does not establish an injury-in-fact sufficient to support a quiet title claim.[1] Undeterred, Iinuma and his counsel, Stone, have again filed the same claim hoping for different result.

This district court summarized Stone's approach in *Dicion v. Mann Mortgage, LLC, et al,* 2014 WL 5827137 (D. Haw. Nov. 10, 2014) ("*Dicion II*"), as follows: "The main difference setting this action apart from Stone's other actions is that this is the second action Stone has filed on behalf of Plaintiff against these same Defendants." This Court agrees, and dismisses the Amended Complaint, as further explained below.

**I.  Iinuma's Quiet Title Claim is Dismissed (Count II)**

---

[1] *See, e.g., Dimitrion v. Morgan Stanley Credit Corp.,* 2014 WL 2439631 (D. Haw. May 29, 2014); *Toledo v. Bank of New York Mellon*, CV 13–00539 DKW–KSC, Doc. No. 45 (D. Haw. May 2, 2014); *Broyles v. Bank of Am.,* 2014 WL 1745097 (D. Haw. Apr. 30, 2014); *Moore v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 1745076 (D. Haw. April 30, 2014); *Wegesend v. Envision Lending Grp.*, 2014 WL 1745340 (D. Haw. Apr. 30, 2014); *Dicion v. Mann Mortg., LLC*, 2014 WL 1366151 (D. Haw. Apr. 4, 2014); *Pascua v. Option One Mortg. Corp.*, 2014 WL 806226 (D. Haw. Feb. 28, 2014).

Because Iinuma previously litigated his quiet title claim, and because he again fails to allege an "injury in fact" for purposes of Article III, Count II is DISMISSED.

### A. **Issue Preclusion**

Iinuma alleges that he is in possession of the subject property; that BANA had no power to enforce the mortgage in 2010; that SPS has no interest in the property, note, or mortgage; and that Defendants' claims of interest in the property have caused a cloud on the title. Am. Compl. ¶¶ 41-47. The Court previously dismissed these claims in *Iinuma I*, and they are now barred by the doctrine of issue preclusion.

Issue preclusion, or collateral estoppel, "preclude[s] relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *Wolfson v.. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010) (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984)). Issue preclusion bars a party "from relitigating an issue if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom [issue preclusion] is asserted was a party to or in privity with a party in the previous action." *Id.* (citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008)). All of these requirements are met here.

In *Iinuma I*, the Court dismissed the complaint asserting a single claim for quiet title based on the lack of Article III standing and failure to establish diversity jurisdiction. The Court acknowledges that, generally, dismissal based on a curable defect such as jurisdiction is not an adjudication on the merits in the traditional sense, and "a second action on the same claim is permissible after correction of the deficiency." *Wolfson*, 616 F.3d at 1064 (citing 18A Wright, Miller & Cooper, Federal Practice & Procedure § 4436 (2000)). "Dismissals for want of justiciability are controlled by the same principles as apply to want of subject-matter jurisdiction. The decision should preclude relitigation of the very issue of justiciability actually determined, but does not preclude a second action on the same claim if the justiciability problem can be overcome. This result holds for dismissals based on a lack of standing, ripeness, or mootness." Wright, Miller & Cooper § 4436 (footnotes with citations omitted). *See also* Fed.R.Civ.P. 41(b) (providing that an involuntary dismissal "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19–operates as an adjudication on the merits").

In *Dicion II*, the district court explained the decision in *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000), which describes the preclusive effect of actions dismissed for lack of jurisdiction as follows:

> Although only judgments on the merits preclude parties from litigating the same cause of action in a subsequent suit, that does not mean that dismissals for lack of jurisdiction have no preclusive effect at all. A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue. *Magnus Elec., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1400 (7th Cir. 1987). The difference is in the type of preclusion, not the fact of preclusion. "[A] judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only relitigation of the ground of that dismissal . . . and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect that nowadays goes by the name of claim preclusion." *Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999).

*Id.* at 318.

As was the case in *Dicion II*, the Court "has little difficulty determining that Plaintiff's quiet title claim is barred by issue preclusion." 2014 WL 5827137, at *7. Iinuma's quiet title claim is virtually identical to his quiet title claim in *Iinuma I*. In *Iinuma I*, this Court determined that these same allegations fail to establish an injury in fact sufficient to support a quiet title claim based on the alleged uncertainty regarding the identity of the mortgagee for the loan. *Iinuma I*, 10/20/14 Order at 5-8. In the current action, Iinuma includes no new facts—and certainly none learned after he filed *Iinuma I*—that would prevent application of *Iinuma I*'s holding that he failed to establish an injury in fact for this claim. Thus, *Iinuma I* bars the same quiet title claim in this action.

## B. Lack of Subject Matter Jurisdiction

Even if issue preclusion did not bar Iinuma's quiet title claim, he again fails to allege injury sufficient to establish standing. To have standing, Iinuma must establish three elements: (1) injury in fact; (2) causation; and (3) redressability. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011). An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). The "injury in fact" requirement under Article III "turns on the nature and source of the claim asserted," and in some cases, an injury in fact "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)).

Iinuma has not established an injury in fact in support of his quiet title claim. In opposition, Iinuma insists that "he is still unsure as to whom he must pay," Opp. at 12, and that he seeks "to obtain a declaratory judgment as to which entity his mortgage payments are due." *Id.* at 11. Again, his injury is no more than his own uncertainty regarding which Defendant is entitled to his mortgage payments, which this Court has already held is neither sufficiently concrete nor particularized to

8

constitute an injury-in-fact. Iinuma never alleges that his loan is in default; that any Defendant, let alone multiple Defendants, has demanded payment from him; or that any Defendant has initiated foreclosure proceedings against the subject property. Absent such factual allegations, the potential for multiple liability or foreclosure is mere speculation and falls far short of constituting an Article III injury-in-fact, and Iinuma's "uncertainty" regarding which Defendant is entitled to his mortgage payments remains insufficient. Further, in the absence of a demand for payment from multiple Defendants, Plaintiff's uncertainty is not fairly traceable to any challenged action of the Defendants, or likely to be redressed by a favorable decision. *See Iinuma I*, 10/20/14 Order at 6. Accordingly, the Court (still) lacks subject matter jurisdiction over the quiet title claim, and Count II is DISMISSED.

## II. Iinuma's FDCPA Claim is Dismissed (Count I)

Iinuma's remaining claim asserts that Defendants used deceptive practices to collect a debt in violation of the FDCPA. Count I alleges that Defendants are not "legally authorized to act on behalf of the Note holder," but that they "have communicated with third parties information about Mr. Iinuma's credit, which information is known, or which should be known to be false." Am. Compl. ¶¶ 33, 39.

The mortgage provides that--

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property[.]

Am. Compl. Ex A. The mortgage further provides that the "covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender." *Id.* The mortgage also provides for changes in the loan servicer--

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Period Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

*Id.*

Iinuma alleges that shortly after execution, "Countrywide sold the Note to a mortgage-backed securities trust." Am. Compl. ¶ 15. Although he alleges that in 2010, BANA began sending notices of default, he admits that the loan was never accelerated and foreclosure proceedings were never initiated. Documents attached to the Amended Complaint show that BANA was the servicer of the loan, and that SPS acquired the servicing rights from BANA. Amended Compl. Exs. C & D.

Iinuma's FDCPA allegations are insufficient to state a claim. The Amended Complaint provides no basis for Defendants to qualify as "debt collectors." The FDCPA "comprehensively regulates the conduct of debt collectors," and "is a strict liability statute." *Tourgeman v. Collins Fin. Servs ., Inc.,* 755 F.3d 1109, 1119 (9th Cir. 2014) (quoting *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1060–61 (9th Cir. 2011)). As a result, the FDCPA "broadly prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Id.* (quoting *Gonzales,* 660 F.3d at 1061 (quoting 15 U.S.C. § 1692e)). To be liable for violating the FDCPA, however, a defendant must be a "debt collector" within the meaning of the statute. *Heintz v. Jenkins,* 514 U.S. 291, 292 (1995).

The FDCPA defines a "debt collector" as (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal

purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include, among other things--

> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
> . . . .
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity
> > (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;
> > (ii) concerns a debt which was originated by such person;
> > (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

*Id.*

Under this definition, "original lenders, creditors, mortgage servicing companies, and mortgage brokers generally do not qualify as 'debt collectors.'" *Long v. Deutsche Bank Nat'l Trust Co.,* 2011 WL 5079586, at *14 (D. Haw. Oct. 24, 2011) (citing cases); *see also Schlegel v. Wells Fargo Bank, NA,* 720 F.3d 1204,

1209 (9th Cir. 2013) (dismissing FDCPA claims brought by mortgagors against mortgagee Wells Fargo, as Wells Fargo was not a "debt collector;" complaint "establishe[d] only that debt collection is some part of Wells Fargo's business" and did not allege that Wells Fargo "collects debts owed to someone other than Wells Fargo").

Also excluded from this definition are assignees of the mortgage debt, if the debt was not in default at the time the debt was obtained. *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); *see also Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 387 (7th Cir.1998) ("The plain language of § 1692a(6)(F) tells us that an individual is not a 'debt collector' subject to the [FDCPA] if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it."); *Soriano v. Wells Fargo Bank, N.A.,* 2012 WL 1536065, at *8 (D. Haw. Apr. 30, 2012) ("[The] Wells Fargo Defendants are not 'debt collectors' under the FDCPA if they were loan servicers that were servicing the loans before they went into default and thereafter sought to collect the debt."); *see also Cameron v. Acceptance Capital Mortg. Corp.,* 2013 WL 5664706, at *4 (W.D.

Wash. Oct. 16, 2013) (determining that MERS is not a "debt collector" under the FDCPA).

The Amended Complaint includes no allegations establishing that BANA, CHL, or MERS' principal purpose of business is the collection of debts, or that these Defendants regularly collect debts owed to another. Nor do the numbered allegations in the Amended Complaint itself allege that the mortgage loan is in default. *But see* Ex. C (Notices of Default). As a result, Iinuma has failed to allege a plausible violation of the FDCPA as to any Defendant who acquired the loan before any unspecified default.

Even if any Defendant were a "debt collector," however, the documents attached to the Amended Complaint reveal that the mortgage expressly provides for changes of the loan servicer; that Iinuma's predecessor received written notice that the servicing was transferred to SPS; and that he was provided with the address for sending payments. Notably, BANA and SPS expressly refer to themselves as servicers during the course of the loan. *See* Am. Compl. Exs. A, C & D. Iinuma's contrary claims that BANA or SPS engaged in deceptive practices by attempting to collect loan payments do not assert facts establishing a plausible claim for relief.

Finally, the allegations that BANA and SPS "both have demanded payments and threatened to take legal action," Am. Compl. ¶ 35, and that "Defendants have

14

communicated with third parties information about Mr. Iinuma's credit," *id.* at 39, are wholly conclusory. The district court dismissed nearly identical claims in *Dicion II* for failure to state a claim. *See* 2014 WL 5827137, at *10 ("These allegations are wholly conclusory--the Complaint fails to explain what debt was attempted to be collected, how Defendants qualify as debt collectors, or exactly what Defendants did that violates the FDCPA. Instead, the Complaint simply tracks the basic elements of an FDCPA claim without alleging facts establishing a plausible basis for relief. On this basis alone, Plaintiff's FDCPA claim fails."). Accordingly, the Court DISMISSES Count I.

### III. <u>Leave to Amend</u>

Given the history of this litigation, the Court has serious doubts that Iinuma could file another amended complaint that both establishes standing as to each claim and asserts a plausible claim for relief. Indeed, *Iinuma I* dismissed his quiet title claim for lack of jurisdiction, and in filing this action, Iinuma asserted no significant new allegations to establish his standing for this claim. Further, his new claim for violation of the FDCPA presents significant defects that are well established in case law.

The Court, however, will grant Iinuma until **March 31, 2014** to file a Motion for Leave to File an Amended Complaint pursuant to Rule 15(a). *See Eminence*

15

*Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (explaining that the Federal Rules provide that leave to amend "shall be freely given when justice so requires," and that "this policy is 'to be applied with extreme liberality" (citations omitted)). The Court is granting Iinuma the opportunity to file such a motion so that he has a full and fair opportunity to raise all possible claims against Defendants at this time and to prevent the filing of a third action alleging new facts and claims.

Such Motion shall attach a proposed second amended complaint. For each claim alleged, the Motion shall explain the basis of the Court's jurisdiction and how, based on Ninth Circuit law, such claim asserts a plausible claim for relief. Further, if the proposed second amended complaint includes a claim for violation of the FDCPA, Iinuma shall explain how he has amended this claim to address the deficiencies identified in this Order. And if the proposed second amended complaint includes a claim for quiet title, Iinuma must explain, pursuant to *Perry,* what new facts he learned since the filing of this action that provide a basis for this Court's jurisdiction. In determining whether to file such Motion, the Court further reminds Iinuma's counsel of Rule 11(b)'s mandate that parties must present arguments that are warranted by the law and are non-frivolous. *See also* Fed.R.Civ.P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated

Rule 11(b)."). If Iinuma does not file such Motion by **March 31, 2015**, the Court shall direct the Clerk of Court to close the case file.

## CONCLUSION

Based on the foregoing, Defendant's Motions to Dismiss are GRANTED. Iinuma is granted until **March 31, 2015** to file a Motion for Leave to File an Amended Complaint. Iinuma is CAUTIONED that failure to do so will result in the dismissal of this action without further notice.

DATED: March 17, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Wallace Iinuma v. Bank of America, N.A.;* CIVIL No. 14-00482 DKW-BMK
**ORDER GRANTING MOTIONS TO DISMISS AMENDED COMPLAINT**